# Kirk's Adm'rs v. Massie et al.

May 26, 1942.

Robert Todd Sweeney for appellants.

Otto Martin for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This suit was brought by the administrators with the will annexed of James Alpheus Kirk, deceased, to obtain the construction of his will and advice and directions as to their duties with respect to the matter of paying out and distributing the funds in their hands. J. B. Kirk, a son of the testator, and A. D. Kirk, a collateral relative, were appointed administrators with the will annexed after the resignation of the executor named in the will.

James Alpheus Kirk died in July, 1939, a resident of Ohio county, leaving surviving him his widow, the appellee Bessie Himes Kirk, one son by her, Arthur Gayle Kirk, and seven children by a former marriage. All of the children are more than 21 years of age, and they and their spouses were made parties to the suit. The testator left $21,716.99 in cash, several thousand dollars in notes, stocks, and bonds, a farm of 141 acres in Ohio county, a one-half interest in another farm of 126 acres, and a house and lot in the city of Hartford. The 141-acre farm has little value for agricultural purposes, but

on it are 14 producing oil wells. The first well was drilled in 1928, and at the time of the testator's death, and for several years prior thereto, his royalties from the wells had averaged more than $200 monthly. The pertinent portions of the will read:

"Fourth: I will and desire that the oils, gas and other minerals underlying my farm near Clear Run Church in Ohio County, Kentucky, containing about one hundred forty one (141) acres be held intact or undivided by executor so long as my wife, Bessie May Kirk, may survive or so long as oil and gas is produced in paying quantities and all royalties, rents and other sums that might accrue be collected by my executor and paid to my heirs as hereinafter directed. * * *

"Sixth: I will and bequeath to my wife, Bessie May Kirk, all my household and kitchen furniture, and all poultry on hands, one cow and one automobile for her own to sell or dispose of in any manner she may desire and in addition thereto I will to her the sum of $1,200.00 in cash per year, to be paid to her monthly by my executor in the sum of $100.00 per month, from any income that might be derived from my estate, * * *

"Eighth: I will and direct that all sums accruing from royalties and rentals from oil and gas wells on my land shall be collected by my executor and that he pay from such sums to my wife, Bessie May Kirk, the sum of $100.00 per month as above mentioned, so long as she may live and the remainder, if any, be equally divided among all my children or their heirs and the said $100.00 per month to be paid from any funds derived from my estate provided the said royalties or rentals are not sufficient to make the said payment of $100.00 per month.

"Ninth: All notes, bonds and stocks that I might own at my death I direct my executor to convert into cash within two years after my death and to distribute the same equally among all of my children or their legal heirs. * * *

"Thirteenth: I will and direct that after the payment of my debts, burial expenses and erecting the monument herein named that the balance of the cash that I may have on hands or on deposit be dis-

tributed equally among all my children herein named. \* \* \*

"Fifteenth: In the event my wife, Bessie May Kirk, does not elect to take my house and lot in Hartford, Kentucky, I direct my executor to sell within a period of two years after my death the same at the Court House door in Hartford, Kentucky, to highest and best bidder and this my will empowers him to make and deliver a General Warranty deed to the same and to divide the proceeds of the same equally among all my children named herein or their heirs."

Because he deemed the language used by the testator to be ambiguous, the chancellor heard oral testimony concerning the conditions and circumstances surrounding the testator at the time the will was executed.

Soon after the testator's death his widow, Bessie Himes Kirk, authorized the personal representatives in writing to distribute to the children the cash on hand, and they distributed to the children the sum of $19,543.05. It may be stated in passing that the record discloses a wholesome and pleasant family relationship, and a laudable attitude on the part of all parties to the litigation. The widow, her son, and her seven stepchildren are in complete harmony and accord, and desire to carry out the intentions of the testator whatever they may have been. The principal confusion is caused by clauses 6 and 8 of the will. Clause 6, standing alone would indicate it was the testator's intention that his entire estate should be kept intact during the widow's life to secure the payment to her out of the income the sum of $100 per month. Clause 8 provides that the bequest to the widow shall be paid out of royalties and rentals from oil and gas wells on the 141-acre farm, and in the event the royalties and rentals are not sufficient for that purpose the bequest shall "be paid from any funds derived from" the estate. It is appellants' contention that under this clause the bequest to appellee Bessie Himes Kirk is payable out of any funds belonging to the estate of the decedent, either income or corpus, and that the entire estate must be held intact by them until her death in order to secure its payment. The circuit court adjudged that the widow, Bessie Himes Kirk, was devised the sum of $1,200 per year during her lifetime, payable in monthly installments of $100 each, out of the oil roy-

alties accruing from the 141-acre farm, and to secure the payment of this bequest the dividends or interest from stocks and notes belonging to the testator at the time of his death, the farm rentals, and the oil royalties collected in excess of the amount necessary to pay to the widow the sum of $1,200 per year should be accumulated and held in trust by the administrators with the will annexed. It was further adjudged that the bequest to the widow was not to be paid out of funds derived from the corpus of the estate, but the corpus of the estate was devised to the testator's children, share and share alike. The administrators with the will annexed were directed to pay to the children all funds derived from the collection of notes and the sale of stocks and bonds or any other item constituting the corpus of the estate as such funds might arise. At the time the judgment was rendered the administrators with the will annexed had on hand the sum of $8,010.03. Of this sum $4,381.49 represented the proceeds of the sale of stocks and bonds and the collection of the principal of notes, and $3,628.54 represented income which had been collected by the administrators with the will annexed. This income consisted of rents, interest, dividends, and surplus of royalty. The court directed the personal representatives to distribute the $4,381.49 to the children and to hold in trust $3,628.54 as an assurance of the payment to the widow of $1,200 per year for her lifetime.

In construing a will the intention of the testator must be ascertained from the will as a whole, and, if possible, all parts of it must be given effect. In the will before us the testator clearly intended that all personal property not given to his wife should be distributed to his children. By clause 9 he specifically provided that all notes, bonds, and stocks owned by him at his death should be converted into cash within two years after his death and distributed among his children. In clause 13 he directed that the balance of cash on hand or on deposit after the payment of his debts and funeral expenses be distributed equally among his children. In clause 15 he directed that his house and lot in Hartford be sold within a period of two years after his death and the proceeds divided equally among his children in the event his wife did not elect to take it for and during her lifetime, an option she was given in clause 5 of the will. The only property excluded from sale and distribution was his farm lands. Undoubtedly he believed that the

764

oil royalties and farm rentals plus any income received from the corpus of his estate before its sale and distribution would be sufficient to pay the bequest made to his widow in clause 6 of the will. The testator's direction in clause 8, that the $100 monthly installment should be paid from any funds derived from his estate provided the royalties or rentals are not sufficient to make the payment, obviously refers to the income and not the corpus of his estate. Such a construction harmonizes the apparent inconsistencies of the instrument and gives effect to each and every provision of it. Where there is an irreconcilable conflict between two clauses of a will, the last clause will be given effect, Muir's Ex'r v. Howard, 178 Ky. 51, 198 S. W. 551, but as said in Thomas Ex'r v. Marksbury, 249 Ky. 629, 61 S. W. (2d) 282, 283:

"Courts will always construe a will so as to harmonize its different provisions and give effect to each, if possible. To this end they will not disturb the first provision further than is absolutely necessary to give effect to the second. It is only where the provisions are irreconcilable that the latter will be preferred and prevail over the former."

The chancellor's construction of James Alpheus Kirk's will conforms to this rule, and when the language of the will is considered in the light of the circumstances surrounding the testator at the time of its execution, there can be no doubt that the construction adopted by the chancellor carries out the testator's intention.

Judgment affirmed.