**Lucy THURMAN et al., Appellants,**

v.

**Nick HUDSON, Appellee.**

Court of Appeals of Kentucky.

June 17, 1955.

John W. Coomes, J. Wirt Turner, Jr., New Castle, for appellants.

Lewis D. Jones, New Castle, for appellee.

CLAY, Commissioner.

In this action to quiet title the legal effect of certain language in a deed is in question.

In 1930, A. M. Hudson deeded property owned by him to appellee for life, then to the latter's wife for life, with remainder to the life tenants' children, "but if they should die without children, said property *shall revert to the heirs* of A. M. Hudson". (Our italics.)

Subsequently in 1936 the grantor executed another deed to the same property to the same grantees, but this deed provided that if the life tenants had no children, the remainder should vest in the survivor of the two. The grantor and appellee's wife have both died, there were no children, and appellee claims fee simple title. The heirs of A. M. Hudson assert a remainder interest after the death of appellee.

The question presented is whether the first deed *vested a contingent remainder* in the heirs of A. M. Hudson, or whether the above quoted provision *reserved an alienable estate* in the grantor which he could subsequently convey. Put another way,

were the heirs of A. M. Hudson granted an interest in the property by purchase, or was reference to them simply descriptive of the reversionary interest retained by the grantor? The Chancellor upheld the second deed.

■ Under the early English common law a "doctrine of reversions" grew up. This doctrine in substance was that if a grantor conveys an estate for life with remainder to his own heirs, the heirs take as reversioners and not as purchasers, and since the grantor is considered the primary reversioner, he may grant away the reversion. See Washburn on Real Property, 5th Ed., Vol. 2, pages 807, 808. This doctrine as an arbitrary rule was abolished in England in 1833. General Statutes 3 and 4, WM. IV, C. 106, Sect. 3. However, in Kentucky since that date, the general principle has been accepted that when a grantor conveys a life estate and provides in general language that on certain contingencies the property shall go to the grantor's heirs, the grantor retains the reversion. See Alexander v. De Kermel, 81 Ky. 345; Pryor v. Castleman, 7 S.W. 892, 9 Ky. Law Rep. 967; and Mayes v. Kuykendall, 112 S.W. 673.

While none of the above cases have been overruled, it is the contention of appellants that subsequent decisions of the court have rejected the doctrine of reversions as a rule of law and have sought the intention of the grantor. Our attention is called to the case of Powell v. Childers, 314 Ky. 45, 234 S.W. 2d 158, 159. There it was held that where property was conveyed for life "'with remainder to the heirs of the first party'," the rights of these heirs as remaindermen could not be defeated by a subsequent conveyance of the remainder by the grantor. In that opinion no mention was made of the common law doctrine, nor were any of the earlier cases applying it discussed. It was held the intention of the grantor to convey the remainder was clear.

On the facts the Powell case is not incompatible with the earlier cases above cited. In none of them did the word "re-

mainder" appear, and the court simply determined the legal effect of the rather uncertain language in the deeds.

■ It seems to us the doctrine of reversions may still be resorted to as a rule of construction in seeking the intention of the grantor from the language used. In the instant case the grantor did not specify that his heirs should take the remainder. The deed provided that the property "shall revert to the heirs" of the grantor. What was his apparent meaning? The words of the deed do not indicate the grantor intended to vest a particular estate in his own heirs. He was considering the possible contingency that the grantees would have no children. In that event he wanted to make sure that the property came back to where it started in his blood line. It is reasonable to assume the grantor anticipated his own death prior to that of both life tenants. In that event he intended the undisposed of remainder to vest in his heirs. There is nothing in the language used to indicate he contemplated such vesting in them prior to his death.

■ It is significant that the grantor used the word "revert". That connotes an undisposed of residue. The word is thus defined in Ballentine's Law Dictionary, 2d Ed. :

"The word is derived from the Latin word 'revertere,' meaning to turn backward. Its usual and ordinary meaning is to return; to come back. Its legal or technical signification imports that property is to go back, or return, to a person who formerly owned it but who parted with the possession or title to it, by creating an estate in another person which has terminated by his act or by operation of law."

■ It may be noted that the right of reversion is recognized by statute. KRS 381.210.

■ Considering the matter as one of intention, the subsequent act of the grantor in executing the new deed shows he did not

believe he had theretofore disposed of the remainder. While it may be argued that he could not change his mind and divest an estate already created, the language of the first deed did not create a vested estate in his heirs. See Burton v. Boren, 308 Ill. 440, 139 N.E. 868. Since the grantor had not parted with it, the undisposed of remainder could properly be conveyed by him in the second deed.

We think the Chancellor properly adjudicated the one issue in this controversy.

The judgment is affirmed.