**DEPARTMENT OF REVENUE et al., Etc.,**
**Appellants,**

v.

**The KENTUCKY TRUST COMPANY, Executor under the Will of Alex Galt Robinson, Deceased, Appellee.**

Court of Appeals of Kentucky.

March 21, 1958.

Rehearing Denied June 13, 1958.

Jo M. Ferguson, Atty. Gen., John L. Ward, Hal O. Williams, Asst. Attys. Gen., Dept. of Revenue, for appellants.

James W. Stites, Louisville, for appellee.

SIMS, Judge.

Appellant, Department of Revenue, hereinafter referred to as Department, assessed a tax of $6,961.08 against a trust estate created by Alex Galt Robinson on the theory there was a possibility the estate would revert to Mr. Robinson and the entire corpus of same was taxable at his death under KRS 140.010. The executor paid this tax under protest and filed its petition for appeal in the Franklin Circuit Court asking that under KRS 134.580 the court order the Department to refund the tax paid. The trial judge held that under the trust agreement there was a possibility the estate would revert to Mr. Robinson and the value of the "possibility of reverter" was taxable under KRS 140.100. Both the Department and the executor have appealed.

On November 27, 1935, Mr. Robinson executed an inter vivos trust providing his wife should receive the income from the trust fund for life and at her death the income should be paid to his two daughters during their lives, with cross-remainder in the event of no lineal descendants, otherwise to such descendants; if both daughters should die without lineal descendants, the

instrument provides "said trust shall be distributed to Trustor's heirs at law in accordance with the laws of descent and distribution then in existence under the laws of Kentucky."

Paragraph 7 of the trust agreement reads:

"This Trust Agreement shall be irrevocable and Trustor reserves no right or interest in the income or principal of the trust estate unto himself. He reserves only the right to approve or disapprove the investment changes and likewise the right to change or add to the advisory committee hereinbefore designated and to add other cash or property to the trust estate."

On March 4, 1953, Mr. Robinson wrote this letter to his trustee:

"March 4th, 1953.
"The Kentucky Trust Company
"Trustee under Agreement with
"Alex Galt Robinson
"Dated November 27, 1935.
"Louisville, Kentucky
"Gentlemen:

"Under date of November 27th, 1935, I entered into a Trust Agreement with you which was intended for the benefit of my wife, Maria L. B. Robinson, my daughters, Alexina R. Wilson and Elizabeth R. Wilson, and their descendants. I am now advised that I may have a possible reverter interest in the fund established by this trust in the event of the death of my wife, my two daughters and their descendants, prior to my death.

"In establishing this trust, it was my intention to part with all right, title and interest of every kind, and if it should develop that I have any interest in the principal or income by the way of reverter to me, if my wife, two daughters and their descendants should all predecease me, then I direct that such interest as I may have now or in the future in said trust fund shall be paid and delivered to Christ Church Cathedral of Louisville, Kentucky, to be added to its General Endowment Fund.

"In Testimony Whereof, witness my signature this 4th day of March, 1953.
                    "Alex Galt Robinson
"Accepted this March 4th, 1953:
"The Kentucky Trust Company
"By S. Lyman Barber, Trust Officer."

Mr. Robinson died April 1, 1954, survived by his widow, his twin daughters (who were then 47 years of age) and four grandchildren, two for each daughter. A tax is imposed by KRS 140.010 on a gift made or intended to take effect in possession or enjoyment at or after the death of the donor.

It is insisted by the Department that as the widow, the two daughters and the four grandchildren all might have died before Trustor there was a possibility the estate would revert to him, therefore the entire corpus of the trust estate (which amounted to some $189,000 at Mr. Robinson's death) was taxable at the death of Mr. Robinson.

■ There might be merit in this contention had no provision been made for this contingency. However, the trust agreement expressly provides in that event "said trust shall be distributed to Trustor's heirs-at-law, in accordance with the laws of descent and distribution then in existence under the laws of Kentucky." This clause creates a class of remaindermen as though Trustor had died intestate simultaneously with the death of the last beneficiary who might die during Trustor's lifetime. This clause certainly does not create a reversionary interest in the trust estate. When this clause is read in connection with paragraph 7 of the trust agreement, which contains these words: "Trustor reserves no right or interest in the income or principal of the trust estate unto himself," there can be no doubt the trust agreement contained no possibility of a reverter; and if the trust failed, the corpus would go to those who would be at that time (the death of the last beneficiary dying during Trustor's lifetime) his heirs-at-law.

The important facts in this case are the terms of the trust agreement and the intention of the Trustor, both of which plainly show no possibility of reverter.

In this jurisdiction we not only have the common law doctrine of reversion as is shown in Weddle v. Weddle, Ky., 280 S.W. 2d 509, but the right of reversion is recognized by KRS 381.210 which provides: "Rights of reversion may be sold and conveyed." However in Thurman v. Hudson, Ky., 280 S.W.2d 507, 508, it is written:

"It seems to us the doctrine of reversions may still be resorted to as a rule of construction in seeking the intention of the grantor from the language used. In the instant case the grantor did not specify that his heirs should take the remainder."

■ When we apply to this trust agreement the rule just quoted from the Thurman opinion, it is manifest Mr. Robinson intended that if the trust failed, his heirs-at-law (at the time of the death of the last beneficiary dying during Trustor's lifetime) would take as remaindermen and not as reversioners.

■ The rule seems to be if a trust fails, the court will restore the trust fund to the Trustor unless he clearly manifests in the trust agreement that no resulting trust shall arise in the event of the failure of the trust. Here, such intention is clearly manifested by the Trustor. Had the instant trust failed, the trust fund would not have reverted to Trustor but same would have been disposed of in accordance with his intention, whether or not such intention was expressed in specific terms. Scott on Trusts, 2nd Ed., § 411, page 2935.

■ We know of no reason why rules applicable to the construction of wills should not apply to the construction of trust agreements. In each it is the endeavor of the courts to determine the intention of the maker of the instrument from the words used in the paper. A well-known rule of construction in wills is, every part and clause of the paper must be read in connection with all other parts, and if possible all parts must be given effect. Kirk's Adm'rs v. Massie, 290 Ky. 760, 162 S.W.2d 783; Corbin v. Manley, 291 Ky. 289, 164 S.W.2d 394; Donelson's Ex'r v. Coates, 299 Ky. 608, 186 S.W.2d 420. If we apply this rule used in the construction of wills to the construction of this trust instrument, we cannot escape the conclusion that, taking the instrument as a whole, the words used by Mr. Robinson plainly show it was his intention then and there to divest himself of any and all interest in the trust fund, both present and future.

■ The Department insists the letter shows Mr. Robinson realized there was a possibility the fund would revert to him under the trust agreement and by this letter he was attempting to change the terms of an irrevocable trust. We do not so construe the letter. Its main purpose was to show that his intention in establishing the trust was to divest himself of all interest in the trust fund.

Our conclusion that there was no possibility of reverter provided in the trust agreement is fortified by the letter Mr. Robinson wrote to his trustee on March 4, 1953. Upon being informed, erroneously as we think, there was a possibility of the trust fund reverting to him, Mr. Robinson wrote his trustee it was his intention in creating the trust fund to divest himself of "all interest of every kind" in the fund. In this letter he merely attempted to make crystal clear his intentions expressed in the trust paper that he had parted with all interests in the trust fund. To forestall a court in erroneously considering the trust paper as giving him a possibility of a reverter, Mr. Robinson more than a year before his death wrote the letter. Admitting arguendo he could not change the terms of the trust agreement by the letter so as to prevent the trust estate from being taxed, yet he could, and did, again say it was his intention to part with all interest in the trust fund.

 ⸱ Although the trust was irrevocable, that fact did not prevent Trustor from disposing of any interest not covered in the trust. Had there been a possibility of a reverter in the trust agreement, this letter in attempting to dispose of it in favor of the Church operated to divest Mr. Robinson of his possibility of a reverter in the trust fund. The possibility of a reverter is not an estate and is inalienable. Here the attempted transfer of it was ineffectual insofar as it undertook to pass any right or interest to the Church, but it had the effect of extinguishing Trustor's possibility of a reverter. Brill v. Lynn, 207 Ky. 757, 270 S.W. 20, 38 A.L.R. 1109. If there was no possibility of a reverter created by the trust, then the letter was innocuous.

The Department relies upon Bosworth v. Commonwealth, 313 Ky. 279, 231 S.W.2d 36; Commissioner v. Church's Estate, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288, and Spiegel's Estate v. Commissioner, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330. The Bosworth and Church cases are not controlling here as in each of them the Trustor expressly reserved to himself the income for life in the trust fund; thus it is apparent the "possession and enjoyment of the trust fund did not pass until the death of the Settlor" and was taxable. In the Spiegel case the Trustor made no provision for the distribution of the corpus of the trust in the event he survived all his children and grandchildren, while in the instant case Mr. Robinson provided that in the event no lineal descendants survived either daughter, the corpus would go to those who would be at that time (the death of the last beneficiary dying during Trustor's lifetime) his "heirs-at-law in accordance with the laws of descent and distribution then in existence under the laws of Kentucky." As above stated, Mr. Robinson provided that in the event of the failure of the trust, the corpus would go to his heirs-at-law as remaindermen and not as reversioners. We will remark in passing that the Bosworth opinion seems to be the only pronouncement of this court on the subject now under consideration, but as just shown it does not apply here as Mr. Robinson retained no interest in the trust fund.

The judgment is affirmed on the appeal of the Department and is reversed on the appeal of the executor. The circuit court is directed to enter a judgment declaring the trust agreement did not create a possibility of reverter, and ordering the Department to refund with interest the tax it collected.

CAMMACK and STEWART, JJ., dissent.