RENDERED:  SEPTEMBER 10, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0895-MR

DR. JOHN R. TODD, IV                         APPELLANT

                APPEAL FROM JEFFERSON CIRCUIT COURT
v.               HONORABLE A.C. MCKAY CHAUVIN, JUDGE
                ACTION NO. 17-CI-006765

HILLIARD LYONS TRUST
COMPANY, LLC, IN ITS CAPACITY
AS TRUSTEE UNDER THE WILL OF
ANNE P. TODD AND ALSO AS
TRUSTEE UNDER THE RUCKER
TODD LIFE INSURANCE TRUST              APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Dr. John R. Todd, IV ("Dr. Todd") appeals the Jefferson

Circuit Court's July 1, 2020 opinion and order granting Appellee Hilliard Lyons

Trust Company's ("Hilliard") motion for judgment on the pleadings and denying

his motion for summary judgment.  Upon careful consideration, we reverse the

Jefferson Circuit Court and remand for further proceeding in accordance with this Opinion.

## BACKGROUND AND PROCEDURAL HISTORY

This case involves the interpretation and application of the Rucker Todd Life Insurance Trust ("the Trust"). Specifically, it requires determining whether the Trust authorizes Dr. Todd to exercise his power of appointment under the Trust to benefit his adopted children.

Rucker Todd ("Rucker") and his wife, Anne P. Todd, had two biological children: Dr. Todd, born in 1947, and Katherine,[1] born in 1951. Neither Dr. Todd nor Katherine has biological children. However, in the late 1970s, Dr. Todd adopted his now-deceased wife's two daughters, Karen and Stephanie. Karen was eighteen and Stephanie was sixteen when they were adopted.

Rucker created the Trust in 1996, and it has been amended five times throughout the years. Hilliard serves as trustee. In short, the relevant portion of the Trust was established for the initial benefit of Dr. Todd, with provision for his "issue" to benefit should he predecease Rucker. The Trust also vested in Dr. Todd the power of appointment. Under Paragraph 13(c), he could exercise such power

---

[1] Katherine is not a participant in these legal proceedings and has taken no position on the issues before this Court. (Trial Record ("T.R.") at 152-55.)

by will, directing Hilliard to pay any principal and undistributed income at the time of Dr. Todd's death to an appointee of his choosing.

However, in 2011, Rucker amended the Trust a fourth time. This amendment prohibited Dr. Todd from exercising his power of appointment to benefit any adopted persons or their descendants or their ancestors. The Fourth Amendment to the Trust Agreement amends Paragraph 13(c) to include subparagraph (3), which states:

> Notwithstanding any provisions of subparagraphs (1) and (2) of this paragraph 13(c), under no circumstances shall any power of appointment granted to any beneficiary of the separate trust estate administered under this paragraph 13 be exercisable for the benefit of any person adopted by another person, the issue of any person so adopted by another person, or the ancestors of any person so adopted by another person.

(T.R. at 101-02.)

Rucker passed away in 2015. Dr. Todd subsequently filed the instant action seeking, among other things, a judicial declaration that he may exercise his power of appointment to benefit adopted persons and their descendants and that any provision treating adopted persons differently than natural children is invalid.[2]

---

[2] Dr. Todd also sought a declaration that he may exercise his powers of appointment under the Anne Todd Trust to benefit adopted persons. The Anne Todd Trust otherwise had similar provisions as the Trust; however, it was never amended to limit the beneficiaries' powers of appointment concerning adopted persons as was the Trust. Accordingly, an agreed order was entered on March 6, 2018, acknowledging Dr. Todd's right to name adopted persons as beneficiaries under the Anne Todd Trust.

Hilliard filed a motion for judgment on the pleadings, asserting the language of the Trust legally and unambiguously prevented Dr. Todd from exercising his power of appointment to favor adopted persons. Dr. Todd responded and moved for summary judgment. He asserted that Paragraph 13(c)(3) did not divest him of his power to appoint adopted persons as beneficiaries and that any such restriction was illegal and unenforceable. He also asked the circuit court to order that his attorney fees be reimbursed from the Anne Todd Trust and the Trust. The circuit court granted Hilliard's motion for judgment on the pleadings, concluding as follows:

> The language of the Trust is not ambiguous. The intent of Rucker Todd, as made clear by the express terms of the Trust as amended, was to prevent the distribution of trust assets to Dr. Todd's adopted children. While the Court very much recognizes and appreciates how and why Dr. Todd may feel genuinely aggrieved as a result, the question before the Court is not whether the intent made clear by Rucker Todd is laudable or reprehensible. The only question is whether it is enforceable. In keeping with the plain meaning of the Trust, the Trust clearly, effectively and *legally* accomplishes Rucker Todd's intent through Paragraphs 32 and 13. As such, and even when viewing the evidence of record in the light most favorable to Dr. Todd, the Court is obliged to find that there are no genuine issues of material fact which would make it possible for him to prevail as a matter of law.

(T.R. at 263-64.) This appeal followed.

-4-

**STANDARD OF REVIEW**

A judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief." *Schultz v. Gen. Elec. Healthcare Fin. Servs. Inc.*, 360 S.W.3d 171, 176 (Ky. 2012) (citation omitted). "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate under a de novo standard of review with no need to defer to the trial court's decision." *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (footnotes omitted).

**ANALYSIS**

We interpret trusts using the same rules applicable to the construction of wills. *See Dep't of Revenue v. Kentucky Tr. Co.*, 313 S.W.2d 401, 404 (Ky. 1958). "The most basic rule of will interpretation is that the testator's intent must be the 'polar star' toward which all interpretive efforts are guided, and this intent will be controlling, absent some illegality." *Benjamin v. JP Morgan Chase Bank, N.A.*, 305 S.W.3d 446, 451 (Ky. App. 2010) (citations omitted). "As in any case where a court is called upon to interpret a document, the first and most important guide is the plain language of the instrument." *Id*. "If the language used is a reasonably clear expression of intent, then the inquiry need go no further." *Clarke v. Kirk*, 795 S.W.2d 936, 938 (Ky. 1990). "However if the instrument's provisions

are susceptible to more than one different–yet reasonable–interpretation, they are ambiguous; and, we may look to extrinsic evidence during our interpretation." *Williams v. City of Kuttawa*, 466 S.W.3d 505, 509 (Ky. App. 2015). We do not examine provisions of the trust in isolation, rather we "construe the drafter's intent from a consideration of the whole document." *Benjamin*, 305 S.W.3d at 452.

Dr. Todd challenges the circuit court's interpretation of the Trust, as well as the validity and enforceability of Paragraph 13(c)(3)'s restriction. Before addressing these concerns, however, we note that both parties' briefs partially rely on extrinsic evidence supporting their interpretation of Rucker's intent–an affidavit filed by Dr. Todd and the Anne Todd Trust. This Court concludes that it need not consider language beyond the four corners of the document to resolve this appeal. Accordingly, we decline to consider any argument premised on extrinsic evidence.

In determining Rucker's intent, we first look at Paragraph 32. This paragraph serves a single purpose—it excludes adoptees and their descendants from being considered Rucker's issue, or lineal descendants. More specifically, Paragraph 32 effectively prevents Dr. Todd's adopted daughters, Karen and Stephanie, from benefitting, either directly or indirectly,[3] from the Trust.

---

[3] Paragraph 13 states: "To whatever extent the then remaining principal and undistributed income of the separate trust estate are not effectively appointed by the beneficiary, the then remaining principal and undistributed income shall be distributed to the beneficiary's then living issue per stirpes or if the beneficiary has no then living issue to the Settlor's then living issue per stirpes[.]"

However, before a subsequent amendment of the Trust, Dr. Todd could have still provided for Karen and Stephanie from the Trust by utilizing his power of appointment through his own last will. Paragraph 13(c) granted Dr. Todd the power to appoint his adopted daughters as beneficiaries. Rucker later amended the Trust to add Paragraph 13(c)(3). Paragraph 13(c)(3) serves only one purpose–it prevents a Trust beneficiary with the power of appointment from exercising the power to benefit any adopted person or any ancestors of an adopted person or any descendants of an adopted person.

Dr. Todd argues that Rucker's intention under Paragraph 13(c) was not to limit his power of appointment, but to protect his power to appoint his two daughters as beneficiaries. (Appellant's brief, pp. 7-8.) His argument centers around Paragraph 36A(b). The current language of Paragraph 36 was added to the Trust in 2002, and states:

> 36A. <u>Generation-Skipping Provisions.</u>
>
> (a) Notwithstanding any other provision of this instrument:
>
> (1)     If a trust created under this instrument (the "original trust") would only be partially exempt from federal generation-skipping tax after the attempted allocation of a GST exemption to it, then, before such allocation and as of the relevant valuation date under Section 2642 of the Code with respect to such allocation, the Trustee may (but need not) create instead two separate trusts of equal or unequal value which shall be funded fractionally out of the available property, and

which shall be identical in all other respects to the original trust, so that the allocation of GST exemption can be made to one trust which will be entirely exempt from federal generation-skipping tax. The two trusts created under this subparagraph (i) shall have the same name as the original trust except that the trust to which GST exemption is allocated shall have the phrase "GST exempt" added to its name, and (ii) are sometimes referred to herein as "related."

(2) If property which is held in, or is to be added or allocated to, a trust pursuant to this instrument is subject to different treatment for any reason for purposes of the generation-skipping tax under Chapter 13 of the Code than other property being added or allocated to, or also held in, that trust, then the Trustee may (but need not) hold such property instead as a separate trust that is appropriately designated to distinguish it from the trust to which the property otherwise would have been allocated, but that is identical in all other respects to that trust. The identical trusts resulting from application of this subparagraph are also sometimes referred to herein as "related."

(3) It is the intent of the Settlor that the Trustee shall not be required to create or administer a trust herein that is only partially exempt from generation-skipping taxes, or to commingle property subject to different treatment for generation-skipping tax purposes whether because the transferees with respect to the property are assigned to different generations or otherwise. The provisions of this paragraph (a) are intended to enable the Trustee to avoid such situations by empowering the Trustee to segregate trust property (i) that is entirely exempt from generation-skipping tax from trust property that is not exempt, or (ii) that is otherwise treated differently from other trust property for purposes of the generation-skipping tax, and that provisions of this paragraph (a) should be applied in a manner consistent with this intention.

(b)     To the extent it is consistent with the Trustee's fiduciary obligations, the Trustee, in making discretionary distributions of net income and principal from the related trusts referred to in subparagraph (a) of this paragraph 36A, shall take advantage of the opportunities provided by the creation of such related trusts to avoid or delay generation-skipping tax when making discretionary distributions, ***and to maximize the amount of trust property that eventually may be distributed to the Settlor's grandchildren or more remote descendants*** without transfer tax of any kind at the termination of all trusts created under this instrument.

(T.R. 90-92) (emphasis added).

Dr. Todd asserts that Paragraph 36A(b)'s reference to grandchildren conflicts with Paragraph 13(c)(3), and that the Trust should be interpreted in such a way that Rucker's desire to maximize eventual distribution to grandchildren is preserved by Dr. Todd having the right to use his power of appointment for their benefit.

Perhaps it was Rucker's primary desire that his grandchildren benefit from the Trust or perhaps not. Perhaps it was Rucker's primary desire that the Trust ultimately be distributed in such a way that the least amount of any inheritance or estate tax be paid. Dr. Todd's argument is well taken that such intentions have not been presented with clarity and without ambiguity in reading of the Trust.

When utilizing the plain language interpretation based on the four corners of the document, we would not consider whether Mr. Todd had biological

or adopted children or grandchildren or not. Whatever his intent, it should be made clear without the reader having knowledge of the actual specifics of Mr. Todd's heirs at law. However, it is not necessary to go to great lengths to make such determinations for purposes of this appeal since Paragraph 13(c)(3) is unenforceable and illegal for public policy reasons.

### *The restrictions of Paragraph 13(c)(3) are not legal and are unenforceable.*

Dr. Todd next argues that the Trust's limitation on his power of appointment is unlawful and violates Kentucky's public policy in favor of treating adopted children the same as biological children. KRS[4] 199.520(2) states:

> Upon entry of the judgment of adoption, from and after the date of the filing of the petition, the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal considerations, the natural child of the parents adopting it the same as if born of their bodies.

Additionally, in 2014, the General Assembly passed legislation enacting the Uniform Trust Code (the "UTC") in Kentucky. The UTC is intended to provide a comprehensive set of rules for trust governance. It applies to both newly enacted trusts and to trusts which were in existence prior to the effective date of the legislation, such as the trust in question here. In pertinent part, KRS 386B.1-030(2)(c) states, "The terms of a trust prevail over any provision of this

---

[4] Kentucky Revised Statutes.

chapter, except . . . [t]he requirement that a trust and its terms be for the benefit of its beneficiaries, and that the trust have a purpose that is lawful, not contrary to public policy, and possible to achieve[.]"

What is very clear from the amendment added to the Trust in 2011, *to wit* Paragraph 13(c)(3) is that, "**under no circumstances shall any power of appointment granted to any beneficiary of the separate trust estate administered under this paragraph 13 be exercisable for the benefit of any person adopted by another person, the issue of any person adopted by another person, or the ancestors of any person so adopted by another person**." The plain reading of this language goes far beyond just limiting Dr. Todd's ability to designate his adopted children as beneficiaries. The plain reading of this language is that Dr. Todd cannot use his power of appointment for the benefit of **anyone** who is an ancestor of an adopted person, a descendent of an adopted person, or is an adopted person. Such rejection of an entire class of people is, first and foremost, against public policy, both generally and specifically as to KRS 199.520.

It is the law in Kentucky that one may gift, bequeath, or otherwise distribute their assets to whomever they so desire, and may disinherit those who would otherwise be considered heirs at law. "The law permits a person to dispose of their property as they see fit." *Brummett v. Brummett*, 331 S.W.2d 719, 722 (Ky. 1960) (citations omitted). However, when one wants to do so from beyond

-11-

the grave, and with minimal and limited tax consequences, there is the small price to pay of at least a modicum of societal input.

For argument's sake, even if it is determined that Dr. Todd could not use his powers of appointment to benefit his children, under the terms of Paragraph 13(c)(3), he would unlikely be able to use said powers for the benefit of any charitable cause as well. It would be nearly impossible, if not impossible, to find any charitable organization which discriminates between who it serves or benefits, and who it does not, based on a person's status of being the descendent of someone who has been adopted, being the ancestor of someone who has been adopted, or simply by having been adopted themselves.

To be very clear, this is not saying that people should not be allowed to disinherit anyone they want, including their own children or grandchildren, adopted or biological. The fact is, if Rucker's intention was to ensure his grandchildren, Karen and Stephanie, or anyone else adopted by his children, did not benefit from the Trust, there are numerous other ways the Trust could have been drafted to make that intention clear without discriminating against an entire class of people–in this case, adopted people, their descendants, and their ancestors.

Additionally, contrary to the circuit court's reliance on *Vega v. Kosair Charities Committee, Inc.*, 832 S.W.2d 895 (Ky. App. 1992), this Opinion does not disagree with the ruling in *Vega*. The clear distinction between *Vega* and the case

-12-

*sub judice* is that since the ruling in *Vega*, Kentucky adopted the Uniform Trust Code, KRS Chapter 386B, and specifically pertinent here, section 1-030(2)(c). There is no direct conflict between a finding that the term in Paragraph 13(c)(3) of this Trust is against public policy and the direct holding of *Vega* that, "[T]he principle that a person is permitted to pass on his property as he sees fit takes precedence over the policy expressed in KRS 199.520(2)." *Id.* at 897.

In *Vega*, the appellant therein argued that his biological son, who had been adopted by his late wife prior to her death, should be considered the "issue of the body" of her. The deceased wife had been the recipient of a testamentary trust set up by her father where she was the lifetime beneficiary and where, upon termination of the trust, the remaining assets were to be transferred to the "issue of her body" or, failing such issue, to Kosair Crippled Children's Hospital. *Id.* at 896. Certainly, the grantor in *Vega* had the right to insist that only his biological progeny could take or benefit from the trust he had funded, and failing that, the assets would be transferred to a charity he had chosen–a charity that no doubt served adopted persons.

Certainly, if Rucker's intent in arranging his Trust was to ensure that only his biological descendants, or "issue," could benefit from the Trust, or to ensure specifically that Dr. Todd's adopted children did not benefit, such is certainly within his right and within the holding in *Vega*. However, it is not

-13-

completely clear whether his intent was simply to disinherit specifically Karen and Stephanie, disinherit any other adopted persons but not Karen and Stephanie, or rather to make sure only his biological descendants benefited from the Trust. What is clear, from the plain reading of the language used in Paragraph 13(c)(3) of the Trust, is that at least this portion of the Trust fails as being against public policy pursuant to KRS 386B.1-030(2)(c).

Further, we agree with the *amicus curiae* brief of Kentucky Adoption Coalition; there is no realistic way Paragraph 13(c)(3) of the Trust can be achieved. The laws in the United States of America regarding the confidentiality and access to adoption records are as varied as the states and territories of which it is comprised. And this country, while inhabited by only a fraction of the worldwide population, is a population which consists of people from countries all over the world and each with their own laws regarding adoption records. Additionally, there are certainly a great number of people, at least historically, who are not even aware that they were adopted or descended from an adoptee.

As the argument put forth by the Appellant and the *amicus* supposes, it *is* likely that virtually anyone in America can be the issue of, ancestor of, or descendant of, any person so adopted by another person. The amendment would require that any possibility that the power of appointment exercised in favor of some distant relative of an adoptee would violate the Trust. Such pervasive risk of

the Trust being violated by simply acting on the power of appointment renders it virtually impossible to achieve, further violating KRS 386B.1-030(2)(c).

For this, and all the reasons previously stated, we hold that Paragraph 13(3)(c) violates the Uniform Trust Act as adopted by Kentucky. Therefore, the order of the Jefferson Circuit Court is reversed, and this case is remanded with instructions that said term is to be stricken as void and Dr. Todd shall be allowed to utilize his power of appointment under the Trust as though such clause never existed.

### ***Regarding the denial of Dr. Todd's request for legal expenses.***

We cannot necessarily say there is error in the circuit court's denial of Dr. Todd's request for legal fees as the applicable statute permits the award of legal fees, but does not demand such. "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." KRS 386B.10-040.

Here, Dr. Todd sought a judicial declaration vesting him with a power of appointment not encumbered by Paragraph 13(3)(c) of the Trust, which we have held violates the Uniform Trust Act as adopted by Kentucky. His suit against the Anne Todd Trust was resolved by an agreed order, rendering any controversy

therein moot. In light of this Court's having reversed the circuit court as to its denial of a significant aspect of Dr. Todd's suit, the circuit court may want to reconsider its ruling as to Dr. Todd's request for legal fees to be paid from the Trust.

## **<u>CONCLUSION</u>**

The Jefferson Circuit Court's July 1, 2020 opinion and order is reversed, and this case is remanded for entry of orders consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE HILLIARD LYONS TRUST COMPANY, LLC: |
|---|---|
| M. Thurman Senn<br>Louisville, Kentucky | |
| | Griffin Terry Sumner<br>Cory J. Skolnick |
| *AMICUS* BRIEF FOR KENTUCKY ADOPTION COALITION: | A. Thomas Sturgeon III<br>Louisville, Kentucky |
| Jenny E. Scott<br>Lexington, Kentucky | |