## Kentucky Children's Home, Lyndon, Ky., et al. v. Woods et al.

Nov. 28, 1941.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellants.

L. L. Walker and Charles J. Walker for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

By the fourth clause of his will dated August 15, 1938, J. B. Woods bequeathed the income from sixty shares of stock of the Greater Louisville First Federal Savings & Loan Association to his sister, Carrie Woods, during her life with remainder to the "Childrens Orphans Home at Lyndon, Kentucky." The early history of this charity incorporated under the name "Kentucky Childrens Home Society" is set forth and its activities eloquently described by Judge O'Rear speaking for this court in the case of Hager, Auditor, v. Kentucky Children's Home Society, 119 Ky. 235, 83 S. W. 605, 67 L. R. A. 815, in which the act of the Legislature of February 20, 1904, appropriating $15,000 annually to the Home's support was held constitutional. The subsequent proceedings by which the commonwealth assumed direct control and provided for the liquidation of its bonded indebtedness were described in our opinion in the case of Speer v. Kentucky Children's Home et al., reported in 278 Ky. 225, 128 S. W. (2d) 558.

Conceiving that the dissolution of the original corporation prior to the testator's death and the conveyance

of its property to a successor incorporated under the direction of the Department of Welfare, as described in the Speer case, supra, defeated the testator's intention and caused the bequest in remainder to lapse, the executrix instituted this suit for construction of the will, asserting that the remainder interest in the stock passed under the residuary clause to other charities. By an amended petition the executrix alleged that the lapsed bequest in remainder passed as intestate property to the heir at law under the provisions of Kentucky Statute 4843, and the heir at law, by answer and counterclaim, asserted her alleged right to inherit. The Department of Welfare and the successor corporation and all others whose rights were affected were made parties, whereupon, the chancellor adjudged "the legacy set forth in Clause 4 of the will of J. B. Woods having lapsed as to the Childrens Orphans Home at Lyndon, Kentucky, the remainder interest now goes to Lena Creech as the only heir at law of J. B. Woods." Hence, this appeal.

The substance of the argument advanced by counsel for the executrix and for the daughter in support of the chancellor's decree is that the testator by the bequest referred to intended to benefit a privately conducted charity and not a public institution operating a public charity and supported financially by the commonwealth. Hence they invoke the generally recognized doctrine that a legacy or devise to a corporation lapses where the corporation ceases to exist before the death of the testator. Several cases from other states are cited applying this rule to private charitable corporations which ceased to exist as such. But it is not necessary to discuss these authorities since we are convinced that Mr. Woods knew that the original private corporation had been dissolved and its property transferred to its successor in order that its indebtedness might be liquidated and its ultimate support assumed by the State, and intended that the bequest should stand. While it is true that the original corporation had not been dissolved or its property transferred to the successor corporation at the time Mr. Woods executed his will, these details were consummated in January, 1939, and the testator did not die until May 15, 1939. Moreover, in 1936, the Legislature had transferred to the Department of Welfare by express enactment the administration of the state functions theretofore vested in the Kentucky Childrens Home Society. Kentucky Statutes, 4618-101. On May 5, 1939, this court

rendered its decision in the Speer case, supra, approving the plan which included the issuance of bonds by the new corporation and the payment to it of rentals by the Department of Welfare sufficient in amount to retire the bonds over a period of years. All these were matters of public record and presumably the subject of wide discussion, notwithstanding which facts, the testator did not revoke the bequest, although on February 6, 1939, he added to his will numerous codicils.

It is futile to argue that the testator regarded the institution as a purely private charity, in view of the fact that as early as 1902 the state had begun to contribute funds for its support, and since 1912 had appropriated $50,000 annually for that purpose. Kentucky Statutes, 331b-1. Nor can it be said that the contemplated acquisition of the property by the state after the bonded indebtedness had been discharged necessarily dispensed with the need of private contributions, in view of the fact that the state did not obligate itself to continue the payment of the stipulated rentals beyond the period of one year. Presumably the state will ultimately acquire the title and supply all the funds which may be needed by the institution, but with this happy result achieved, it could not be said that voluntary donations would not broaden the scope of the charity to be administered, or that the agency carrying out the work would be any the less a proper recipient of such donations. Corpus Juris Secundum, Vol. 14, Charities, Section 13, p. 442. In the absence of factors inducing the belief that the testator was primarily concerned with the ownership of the property employed, rather than in the result to be accomplished in the administration of the charity, or that he did not know of the plan which had been consummated, and would not have made the bequest had he known it, we are constrained to hold inapplicable the narrow rule contended for by appellees' counsel, which, after all, rests upon the presumed intention of the testator.

Counsel for appellees state that the cy pres doctrine is not in effect in Kentucky. But in this they are mistaken. In so far as it requires the application of liberal rules of construction in order to uphold charitable bequests wherever it is possible to do so, it is credibly a fixed part of our jurisprudence. "In its last analysis it is found to be a simple rule of judicial construction de-

signed to aid the Court to ascertain and carry out, as nearly as may be, the intention of the donor." American Jurisprudence, Vol. 10, page 676. It has never been adopted by our courts to the extent of supplying a beneficiary or purpose where these objects are not expressed by the donor. Gill's Ex'r v. Woman's Club of Louisville, 205 Ky. 731, 266 S. W. 378. But it is fully operative where "there is an available charity to an identified or ascertainable object, and a particular mode, inadequate, illegal, or inappropriate, or which happens to fail, has been prescribed." Moore's Heirs v. Moore's Devisees, 4 Dana 354, 29 Am. Dec. 417. See, also, the exhaustive treatise on the subject in the case of Gooding et al. v. Watson's Trustee, 235 Ky. 562, 31 S. W. (2d) 919; and the recent case of Harwood et al. v. Dick, 286 Ky. 423, 150 S. W. (2d) 704, citing with approval Moore's Heirs v. Moore's Devisees and other decisions of this court in harmony with the principles announced. Here the general charitable intent of the testator was made manifest by his numerous bequests to other charities. His specific charitable intent to aid in providing homes for helpless and abandoned children was manifested by the fourth clause of his will as we construe it. There is nothing in the record to indicate that he was interested in the continuity of the corporate existence of the agency casually designated "the Children's Orphans Home at Lyndon, Kentucky." Technically, the termination of the corporate existence of the Kentucky Children's Home Society destroyed the capacity of that particular corporate entity to accept the bequest. Actually, it did no more than render unavailing the services of that particular corporate entity in administering the charity, at the same time bringing into existence another agency capable of more adequately administering it. Assuming our construction of the testator's intention to be correct, a state of facts calling more forcefully for the application of the cy pres doctrine as it exists in this state would be difficult to conceive.

We reject as unsupported by the record and as contradictory of the beneficent intentions of the testator disclosed by his numerous bequests to charity aggregating some $50,000, counsel's suggestion that testator's motivating desire was to minimize inheritance and estate taxes, and hence, should be presumed to have been un-

willing to contribute to an institution whose entire support ultimately might be supplied by the state from funds drived through taxation.

Judgment reversed for proceedings consistent with this opinion.

Whole Court sitting.