## Streeper Estate

*Robert Trucksess,* for accountant.

*Marvin I. Block,* Special Assistant Attorney General, for Commonwealth of Pennsylvania, claiming as statutory heir.

*J. Brooke Aker,* for Haws Avenue United Methodist Church.

*William L. Moyer,* for Grace Evangelical Lutheran Church.

*Michael H. Hynes, J. Brooke Aker,* and *Jesse W. Beeghley, Jr.,* for legatees.

TAXIS, *P. J.,* December 31, 1975—The first and final account of Alice Cole Johnson, executrix, was examined and audited by the court on November 21, 1975.

The account shows a balance of principal and income for distribution of $157,723.43, composed of cash.

The petition for adjudication recites that written notice of the filing of the account was given to all persons to whom written notice is required to be given by law and by the rules of court.

The transfer inheritance tax has been paid. Accountant is allowed a credit of $3,871.39 for additional transfer inheritance tax paid after the filing of the account and preparation of the petition for adjudication.

Decedent died on August 9, 1972, leaving a handwritten will dated March 12, 1969 and a codicil dated February 23, 1970. In so doing, she unfortunately produced a testamentary writing that is less than explicit in two material respects, both of which are now before the court for resolution. The first difficulty is caused by Item Third (b), in which testatrix gives "The sum of Ten Thousand Dollars ($10,000.00) for a memorial in memory of my sister Mary Streeper Dyer." Initially, claims were made that this gift lapsed for vagueness, because no beneficiary or recipient was designated. Alternatively, assuming no lapse, claims to this bequest have been submitted by two churches, the Grace Lutheran Church and the Haws Avenue United Methodist Church. The Haws Avenue Church is given a cash gift of $10,000 in addition to the one here in question, and decedent was a member of this church. However, Mary Streeper Dyer, for whom the memorial is created, was a member of Grace Lutheran Church. Accordingly, both churches are suitable and logical recipients for such a bequest. All other parties, including the Commonwealth, who might have some concern with this issue have withdrawn their objections or claims; and as we have no hesitation in finding that this bequest does not lapse but rather constitutes a trust lacking only a named trustee (see McClain Estate, 435 Pa. 408, 257 A.2d 245 (1969). We are pleased to note that counsel for the churches have taken the lead and amicably agreed that each shall

receive one-half of the bequest. This agreement is contained in a letter dated October 29, 1975, from J. Brooke Aker, Esq., to William L. Moyer, Esq., and sets forth that the settlement was reached on November 7, 1975. Said letter is incorporated herein by reference and distribution in accordance with it is approved.

Of greater difficulty is the issue raised by testatrix' failure, at least in specific language, to give away all of her estate. A review of the will demonstrates the problem. Item First is a routine direction to pay debts and funeral expenses. Item Second gives, "All the rest, residue and remainder of my estate . . . unto my sister, Linda Streeper Shank, absolutely." Item Third then provides, "In the event that my sister, Linda Streeper Shank, should predecease me, I direct that my hereinafter named executor convert my entire estate into cash, and after the conversion, I give and bequeath the net proceeds as follows: . . ." Including certain changes and additions made by the codicil, here immaterial, testatrix then made cash bequests totaling $68,-000, to various charitable organizations and individuals. In Item Fourth, she provided that estate, inheritance and succession taxes were to be paid out of the principal of her general estate to the same extent as if said taxes were expenses of administration, and stated that all legacies and other gifts of principal and income should be free and clear of tax. Item Fifth appoints testatrix' sister, Linda Streeper Shank, executrix.

Linda Streeper Shank predeceased testatrix. The balance for distribution is something more than twice the total of the cash bequests made in the will. A claim was originally entered for the balance by Alice Stallman on the basis of intestacy, claim-

ant being the great-niece of testatrix' grandfather, i.e., a second cousin of decedent, but this claim has been withdrawn. A like claim to the balance of the estate has also been entered by the Commonwealth as intestate heir, and this is the claim before us.

This claim is based simply upon the failure of testatrix, as the Commonwealth argues, to dispose of her entire estate. The validity of the will is not in question. The pecuniary beneficiaries, however, also claim the balance of the estate, on a proportionate basis, and thus oppose the Commonwealth's claim. They reason that an analysis of the will from its four corners shows a clear intent on the part of testatrix to dispose of her entire estate through the device of specific cash gifts, which establish a proportion which may be applied to the estate which remains after the cash bequests are paid. The beneficiaries' claim is based almost entirely upon the authority of Grier Estate, 403 Pa. 517, 170 A.2d 545 (1961).

In Grier, decedent was a Philadelphia attorney who died at the age of 87, having specialized in probate matters for 67 years. He typed his own will and, in the first item, after ordering his executors to sell his personal property, directed that all "taxes and the like" be paid, and then he ordered them ". . . to distribute the residue to and among the following named persons and/or corporations . . ." Twenty-seven cash gifts, totaling $125,450, followed, yet this was only about one-fifth of the distributable estate. The first item was followed by a blank space the width of the page and two inches deep. Finally, there followed an authorization to sell decedent's residence (of little relative value) and the naming of two executors, which was later modified by testator in longhand, at the bottom of the will, when one of

the named executors died. Of additional importance is the fact that the last named legatee, under Item First, was typed in a portion of the blank space after the rest of the will had been made, because its position differs from that of the body of the will, as does the shade of the typewritten material. There was similar deviation in the position of the two beneficiaries named prior to the last one, so these too may have been added.

In Grier, the court pointed out that testator had three heirs, one paternal and two maternal cousins. The maternal cousins were among the named beneficiaries, the paternal cousin, with whom testator had no communication, was not. The court, on these facts, ruled that the entire estate should be distributed to the named beneficiaries, pro rata. It found, from an examination of the entire will, that testator constituted the named beneficiaries legatees of the whole estate as he had defined it previously, that is to say, all his assets less debts, inheritance taxes and the like. His direction to distribute the residue to and among the beneficiaries could be effectuated in this way, but not by allowing four-fifths of the estate to go by intestacy. The court placed great emphasis on the intent which it found expressed in the will to dispose of all the estate, which is a fundamental precept of will construction in any event: Carmany's Estate, 357 Pa. 296, 53 A.2d 731 (1947). The court deemed that the use of monetary sums rather than fractions and the leaving of the blank space were convenient means of adding additional beneficiaries without having to rewrite the entire will. The court reiterated that the key word in describing the intent to be effectuated was "residue" which, in the disposition of the matter made by the lower court, had been restricted, in

spite of its established meaning, to the cash bequests. Other factors were also discussed, and whether they are all of equal vigor in sustaining the conclusion it is unnecessary to decide; the overall rule which emerges is that a gift which is stated to be of the entire estate or the residuary estate will be so enforced and effectuated, even though the literal description of the gift may not be entirely consistent, and provided that a reasonable and logical pattern of distribution can be ascertained.

There were, in Grier, two dissents, based upon the belief of the dissenters that this rule effects a reformation of the will, and that if a will is incomplete, it is, nevertheless, the creature of its maker. "There is a point beyond which, to achieve what only seems to be a good result, we should not stray about in the fabulous area of a mind's intention. Nor should we correct the testator's errors": Dissenting opinion, Mr. Justice Bok, 403 Pa. at 532. Undoubtedly, either approach *could* be the rule; but the one we are bound to follow is that of the majority. Allowing that no two wills are exactly the same, nevertheless, the parallels between Grier and Streeper are clear. In Item Second, testatrix gave the rest, residue and remainder of her estate to her sister, and then, in Item Third, provided that, in the event the sister predeceased her, her executor was to convert her entire estate into cash, at which point testatrix gave and bequeathed the net proceeds, of such conversion, to enumerated legatees. Surely, this is as strong an expression of intent as in Grier that testatrix intended, in the provisions that followed, to dispose of her entire estate. Testatrix also inserted the tax clause in Item Fourth, presumably as did Grier, to maintain an absolutely fixed proportion between her various beneficiaries,

especially in light of the fact that her charitable gifts are now exempt from inheritance tax. Cf. Grier Estate, supra, 403 Pa., at 527. She further mentioned "residue" several other times in the gifts in Item Third.

The Commonwealth makes a number of contrary arguments. The first is that Grier used the words "to and among" in demonstrating an intent to distribute the estate proportionately, while the present testatrix did not. However, whether precise words are used begs the issue; the question is whether or not the intent of testatrix to dispose of all of her estate appears with reasonable clarity. When testatrix gave the residue to her sister, with a gift over of the same quantum of estate in case of the sister's death, her intent is evident enough. The Commonwealth also contends that the absence of any blank space in the present will, as opposed to Grier, refutes any inference that dollars were used instead of fractions for convenience. We think this is not a material difference, since, in any event, Grier clearly expressed an intent that his will dispose of his entire estate. The Supreme Court, at 403 Pa. 526, in its opinion in Grier, supra, minimized the ultimate importance of the blank space, by negating the inference which the lower court had drawn that it was for a residuary clause which testator had neglected or forgotten to put in. This argument can be made both ways and thus is not helpful, since the absence of a blank space in this testatrix' will might well mean that she was already satisfied that she had disposed of all of her estate. Finally, the Commonwealth stresses that Item Third in the present will does not contain the word "residue," which only appears for dispository purposes in Item Second; yet, the continuity and interrelationship of

Items Second and Third are so clear that their paragraphing is of no moment in the overall interpretation of the will.

As pointed out in Grier, supra, 403 Pa. at 524, there is a comparison between cases of the present type and the more usual ones of lapsed or void legacies. Such go into the residue and are divided among the residuary legatees pro rata. The principle is the same, once it is clear that a testator intended to dispose of the entire estate; the unallocated portion of the residue can pass under the language of the will only by dividing it pro rata among the named beneficiaries.

Subject to distributions heretofore properly made, the net ascertained balances of principal and income are awarded as set forth under the last paragraph of the petition for adjudication and in accordance with this adjudication.

Counsel for accountant shall file a schedule of distribution in duplicate.

The account is confirmed, and it is hereby ordered and decreed that Alice Cole Johnson, executrix, as aforesaid, forthwith pay the distributions herein awarded.

And now, December 31, 1975, this adjudication is confirmed nisi.