**Brenda GRAHAM, Debra K. Mattingly, and Lisa A. Triplett, Appellants,**

**v.**

**Audrey FULKERSON, Successor Executrix of the Estate of Leon Owens,[1] and Janet Owens, Executrix of the Estate**

---

1. Leon Owens is the testator's name on the will, in probate, and in the complaint. His legal name apparently was "William Leon Owens" but he always went by "Leon Owens." We will follow his wishes in this opinion.

of Larry Owens [2], Appellees.

No. 2004–CA–001849–MR.

Court of Appeals of Kentucky.

Dec. 22, 2005.

Discretionary Review Denied by
Supreme Court April 12, 2006.

John David Seay, Bardstown, KY, for
appellants.

**2.** Larry Owens was referred to as "Larry Owens," "Larry D. Owens," and "Larry Dale Owens" in the record. We will use "Larry Owens."

Daniel M. Oyler, Louisville, KY, for appellees.

Before COMBS, Chief Judge; HENRY and SCHRODER, Judges.

## OPINION

SCHRODER, JUDGE.

This appeal of a jury verdict in a will contest alleges the trial court made three errors which caused the jury to rule against the appellants. The rulings by the trial court were correct; therefore we affirm the judgment.

The deceased was an elderly man, Leon Owens, who had lived by himself in a rundown dwelling located in an isolated rural area of Nelson County. Leon Owens could neither read nor write, had no telephone and did not drive. He had no close friends or acquaintances, did not belong to any social organizations or go to church.

Leon Owens's life was not always so bleak. Earlier in life, he was married and had four children—three daughters and a son. However, Leon Owens was not the best husband or father. His wife divorced him and the children were driven away. The three daughters (the appellants herein) had nothing to do with their father. His son, Larry Owens, was not particularly close but was basically Leon Owens's only contact with the outside world.

In 1992, Larry Owens took his father to Bardstown to see an attorney about a will. On July 7, 1992, Leon Owens made his mark on the will and it was duly witnessed. On October 25, 1995, Leon Owens died. His will was admitted to probate on November 30, 1995. It was a simple will, one that reflected his simple life. He left ten dollars ($10.00) to his former wife. Each of his three daughters was given five hundred dollars ($500.00). The rest and remainder of his estate—his farm, his tools,

and his personal belongings—he left to his son. Leon Owens explained the disparity in one sentence. "I make this bequest because my son is the only child who has cared for me in my old age."

The three daughters filed a will contest, contending that at the time of the execution of the will, their father, Leon Owens, was under the undue influence of his son, Larry Owens. A jury was empanelled to hear the facts. After a two-day trial, the jury's verdict was that the will represented Leon Owens's free act and deed, without any undue influence by Larry Owens.

On appeal to this Court, the three daughters present three claims of error. The first alleged error was in not allowing a prior unsigned will into evidence. The second alleged error was in not allowing a witness to testify that Larry was not taking adequate care of their father because Leon Owens was living in squalor. The final alleged error was that the jury's verdict was not supported by sufficient evidence because the will was ambiguous. The three arguments carry as much weight as the three daughters' concern for their father. The jury was correct in concluding it was Leon Owens's last will which reflected his wishes, for the reasons given hereafter.

Appellants' first argument is that the trial court erred in refusing to permit the appellants to introduce evidence of a prior will. The purported prior will was an unsigned, unwitnessed will dated only as July, 1987. The appellants' attorney found the document in his files. The attorney could not remember anything about the circumstances surrounding the document. He did not remember if Leon Owens was ever read or even "marked" the document. Appellants, by their own admission, could not have anyone authenticate the copy or even testify that the original was ever signed. Nevertheless, appellants

contend the document should have been introduced into evidence under KRE 901 as a will because the document purports to be a will on its face. KRE 901(a) provides: "General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The document is titled "Last Will And Testament Of Leon Owens." The document could be a "lost" will of Leon Owens. However, "[t]o prove the existence of a lost will, there must be clear and convincing evidence of the document." *Cruse v. Leary,* 727 S.W.2d 408, 411 (Ky. App.1987). "In order to establish a lost will, it is essential to prove the due execution, contents, and continued existence of the will unrevoked by the testator." *Ferguson v. Billups,* 244 Ky. 85, 50 S.W.2d 35, 35 (1932). The facts in our case simply do not meet those criteria. The most evidence appellants have of a lost will was a purported statement to a former son-in-law that he had a will leaving everything to his daughters, and various witnesses' belief that Leon had a prior will that left everything to his four children equally. *Wood v. Wood,* 241 Ky. 506, 44 S.W.2d 539, 540 (1931) tells us that is not enough evidence.

Neither the due execution nor the contents of an alleged lost will can be established by the mere declarations of the alleged testator. There must be positive proof of facts showing the due execution, the substance of the contents, and the loss of the document before it can be admitted to probate without being produced. The declarations of the deceased tending to corroborate or to confirm other evidence of the main fact are admissible in evidence, but such declarations alone are not sufficient to establish any one of the ingredients essen-

tial to constitute a case for the admission of a lost will to probate.

*Id.*

■ The appellants' second argument is that the trial court erred in not allowing Earl Hill to testify to relevant evidence under KRE 402, "that Larry Owens could not have been taking adequate care of his father because Leon Owens was living in such awful conditions that he was reduced to eating dog food to keep from starving." Appellants wanted to present this testimony as rebuttal evidence to the will itself because it favored Larry when it said "because my son is the only child who has cared for me during [sic] my old age." The statement was also intended to rebut Larry's evidence that he in fact did care for his father. Larry Owens counters that Earl Hill's testimony was based on a visit some three or four months prior to Leon Owens's death, that even if it were true, the claim of undue influence relates to conduct occurring prior to the execution of the will, not after. *Bye v. Mattingly,* 975 S.W.2d 451 (Ky.1998) discusses undue influence in great detail. *Bye* does state emphatically that "[u]ndue influence exercised after the execution of the will has no bearing whatsoever upon whether the testator disposed of her property according to her own wishes." *Id.* at 457. (citations omitted). Since Earl Hill's avowal testimony had nothing to do with Larry Owens's influence at the time the will was written, the trial court properly excluded said testimony.

■ Appellants' final argument is that the jury verdict was not supported by sufficient evidence because the will is ambiguous and unintelligible on its face. The alleged ambiguities appear in "ITEM 5" of said will, which provides: "If all of my decedents predecease me, then my residuary estate shall be distributed in fee simple to my heirs-at-law under the laws of

the descent of distribution of the Commonwealth of Kentucky." *Linton v. Hail*, 201 Ky. 698, 258 S.W. 111, 112 (1924) recognized the testator's intent, or:

> the interpretation of wills is to ascertain from the whole instrument the meaning of the testator, ... but where, ... there is doubt or uncertainty as to the meaning in any respect, then the courts, from necessity, must resort to certain rules of interpretation which time and experience have demonstrated will in the greater number of instances effectuate that meaning.

In *Clarke v. Kirk*, 795 S.W.2d 936, 938 (Ky.1990) our Supreme Court noted:

> A virtually endless catalog of rules is available for use by courts faced with the task of interpreting or construing a decedent's will. Most of such rules are easily stated and imminently [sic] logical, but extremely difficult to apply to a particular case. See generally 2 J. Merritt, *Kentucky Practice*, Chapters 30 & 31 (1984).
>
> In an effort to achieve a proper result in this case, we go first to the most basic of all such rules, the so-called "polar star rule." This rule holds that in the absence of some illegality, the intention of the testator is controlling. *Scheinman v. Marx*, Ky., 437 S.W.2d 504 (1969), and *Combs v. First Security National Bank and Trust Co.*, Ky., 431 S.W.2d 719 (1968). For additional authority, see 22 *Kentucky Digest*, "Wills," § 439 (1985). To ascertain the testator's intention, it is necessary to first examine the language of the instrument. If the language used is a reasonably clear expression of intent, then the inquiry need go no further. *Gatewood v. Pickett*, 314 Ky. 125, 234 S.W.2d 489 (1950). If it is not such a clear expression, then it is necessary to construe the language used according to appropriate rules of construction.

Looking at the four corners of Leon Owens's will, he clearly disposed of his entire estate *before* he reached "ITEM 5." ITEM 5 is merely a contingency plan in the event all the beneficiaries predeceased the testator (none did). All four children were beneficiaries and were Leon's descendents. Since they survived Leon, they were not decedents but descendents. Whether the scrivener misspelled the word or used the wrong word, it is clear that the testator was making an alternate disposition in the event his beneficiaries predeceased him—which they did not.

The actual disposition in the event the named beneficiaries predeceased the testator was to "my heirs-at-law under the laws of the descent of distribution of the Commonwealth of Kentucky." While it is true that Chapter 391 of the Kentucky Revised Statutes is titled "Descent And Distribution", the first part of the quoted language, to "my heirs-at-law" is sufficient to devise realty and to bequeath personalty. The remainder of the sentence is surplusage. See *Sigmon v. Moore's Adm'r*, 297 Ky. 525, 180 S.W.2d 420, 422 (1944), wherein the court relied on:

> a settled rule of construction that the presumption will be indulged that a testator did not intend to die intestate as to any of his property, and if a will is susceptible of two interpretations, one disposing of property and the other not, that construction disposing of all property will be favored. This rule of construction requires that a residuary clause be construed as a general one unless the language of the will plainly makes it restrictive.

In our case, even though technically an heir is one that inherits when there is no will, a devise or bequest to one's heirs would pass the same property. However, under the above rule of construction, the estate should pass under the will, not by

intestacy or by the laws of "Descent And Distribution."

For the foregoing reasons, the judgment of the Nelson Circuit Court is affirmed.

ALL CONCUR.