Janice BENJAMIN; Eugene C. Blankenbaker; Sandra A. Brubaker; Ettine S. Eschbach; Charles D. Franklin; Myrna Hobbs; William H. Kroeckel; Martha J. Lincks; Kimberly M. Lunieski; Debra S. Maxberry; Pamela M. McNeil; Collista A. Metcalf; John

M. Murphy; Kenneth L. Murphy; Raymond T. Murphy; Shauna Musuraca; Kerry Sans; Kristina Sans; Patricia Sans; Randall Sans; Steven C. Sans; Theodore A. Sans; Mary L. Taucher; Thomas J. Taucher; Gail Young; Richard L. Sans, Jr.; Kristina L. Sans; Susan Diane Oliver; Laura Lynn Young; Bonnie Louise Stutzman; Jackie Ann Jones; and Todd Anthony Sans, Appellants,

v.

JP MORGAN CHASE BANK, N.A., Successor Trustee of the Katherine Ida Kroeckel Hagan Trust, Under Will; the Humane Society of the United States; Fund for Animals; People for the Ethical Treatment of Animals; Society of Animal Protective Legislation; National Hemlock Society (Now Compassion and Choices); the United Animal Nations; Physicians Committee for Responsible Medicine; Kentucky Humane Society—Animal Rescue League; Jeffersonville Humane Society—Arm!; Nicholas Sans; Wildlife Waystation; American Horse Protection Association; and Floyd County Animal Rescue League, Appellees.

No. 2009–CA–000417–MR.

Court of Appeals of Kentucky.

Feb. 26, 2010.

States; Fund for Animals; People for the Ethical Treatment of Animals; Society of Animal Protective Legislation; National Hemlock Society (Now Compassion and Choices); United Animal Nations; and Physicians Committee for Responsible Medicine.

George E. Riggs, Jr., David S. Stierle, Louisville, KY, for appellants Janice Benjamin; Eugene C. Blankenbaker; Sandra A. Brubaker; Ettine S. Eschbach; Charles D. Franklin; Myrna Hobbs; William H. Kroeckel; Martha J. Lincks; Kimberly M. Lunieski; Debra S. Maxberry; Pamela M. McNeil; Collista A. Metcalf; John M. Murphy; Kenneth L. Murphy; Raymond T. Murphy; Shauna Musuraca; Kerry Sans; Kristina Sans; Patricia Sans; Randall Sans; Steven C. Sans; Theodore A. Sans; Mary L. Taucher; Thomas J. Taucher; Gail Young; Richard L. Sans, Jr.; Kristina L. Sans; Susan Diane Oliver; Laura Lynn Young; Bonnie Louise Stutzman; Jackie Ann Jones; and Todd Anthony Sans.

Alan N. Linker, Laura E. Landenwich, Bruce F. Boldt, Louisville, KY, Jennifer Hinkebein Culotta, Jeffersonville, IN, for appellees Humane Society of the United

Before ACREE, KELLER, and LAMBERT, Judges.

*OPINION*

LAMBERT, Judge.

JP Morgan Chase Bank, as successor trustee under the last will and testament of Katherine Ida Kroeckel Hagan, brought this action for a declaration of rights with regard to certain funds presently held in a testamentary trust established for the benefit of thirteen charitable organizations (the "Trust"). Appellees are ten of the thirteen named beneficiaries of the Trust who have entered an appearance in this case (the "Charities"). Appellants are Hagan's thirty-two heirs-at-law (the "Heirs"). The Heirs ask that the bulk of the trust funds be distributed to them under Kentucky's statutory intestacy scheme. Both the Charities and the trustee seek to distribute all the Trust funds to the Charities. The Jefferson Circuit Court entered judgment in favor of the Charities on February 5, 2009, holding that the Trust funds should be distributed to the Charities *pro rata* according to Hagan's expressed intent and the *cy pres* doctrine. After careful review, we affirm.

Hagan executed her last will and testament in November 1994. Article II of the will disposes of all of her property and consists of three bequests. The first is a gift of Hagan's jewelry and art boards to her friend, Betsy Hendershot. The second is a bequest of ten thousand dollars ($10,000.00) and certain book royalties to another friend, Catherine Joseph. The third

bequest, and the one relevant to this case, leaves the residue of Hagan's estate to a trust for the benefit of the Charities. This bequest reads as follows:

I bequeath the residue of my estate, including all lapsed legacies and all personal property to my friend, CATHERINE JOSEPH, as Trustee on behalf of the following organizations:

To the Humane Society of the United States ... I give the sum of TEN THOUSAND DOLLARS ($10,000.00);

To the Kentucky Humane Society–Animal Rescue League ... I give the sum of FIVE THOUSAND DOLLARS ($5,000.00);

To the United Animal Nations (UAN–USA) ... I give the sum of FIVE THOUSAND DOLLARS ($5,000.00);

To the People for Ethical Treatment of Animals (PETA) ... I give the sum of FIVE THOUSAND DOLLARS ($5,000.00);

To Fund for Animals ... I give the sum of THREE THOUSAND DOLLARS ($3,000.00);

To ARM! ... I give the sum of THREE THOUSAND DOLLARS ($3,000.00);

To the Society for Animal Protective Legislation ... I give the sum of TWO THOUSAND DOLLARS ($2,000.00);

To the Physicians Committee for Responsible Medicine ... I give the sum of TWO THOUSAND DOLLARS ($2,000.00);

To the Floyd County Animal Rescue League ... I give the sum of ONE THOUSAND DOLLARS ($1,000.00);

To the Jefferson Humane Society ... I give the sum of ONE THOUSAND DOLLARS [sic] ($1,000.00);

To the American Horse Protection Association ... I give the sum of ONE THOUSAND DOLLARS ($1,000.00);

To the Wildlife Waystation ... I give the sum of ONE THOUSAND DOLLARS ($1,000.00);

To the National Hemlock Society ... I give the sum of ONE THOUSAND DOLLARS ($1,000.00);

If any of the organizations named above shall not be in such existence at the time of my death, the bequest to such organization shall be divided equally among the following named organizations:

The Humane Society of the United States

The Kentucky Humane Society—Animal Rescue League

The United Animal Nations

People for Ethical Treatment of Animals

Fund for Animals

ARM!

Society for Animal Protection Legislation

Physicians Committee for Responsible Medicine

The Wildlife Waystation

American Horse Protection Association

National Hemlock Society

The specific amounts listed in the bequest total $40,000, which was the approximate value of Hagan's residuary estate at the time she executed her will.

On September 19, 2001, one of Hagan's relatives, Florida Hagan, passed away, leaving Hagan an estate worth approximately $830,000.00. However, by that time Hagan had suffered a decline in mental capacity, and she could neither modify her existing will nor execute a new one. Hagan died in November 2005, having never changed the terms of her will to account for the inheritance. Hagan's residuary estate is presently valued at approximately $1.48 million.

Due to her declining health, Catherine Joseph was unable to serve as trustee upon Hagan's death, and JP Morgan Chase Bank was appointed successor trustee of the Trust. On November 28, 2007,

JP Morgan filed an action in the Jefferson Circuit Court asking the court to interpret the Trust to allow for the distribution of all the Trust funds to the Charities in the same proportions directed by Hagan in her will. The Charities filed a motion for judgment on the pleadings, and in response the Heirs moved for summary judgment.

The Jefferson Circuit Court entered summary judgment in favor of the Charities, finding that on its face, the will left Hagan's entire residuary estate in trust for the Charities, and the trustee's *pro rata* distribution proposal was appropriate. The Court went on to conclude that the *cy pres* doctrine afforded the same result and was applicable to the facts of this case. This appeal now follows.

The Heirs' brief makes two arguments. The Heirs first claim that Hagan's will fails to bequeath her residuary estate in trust, and therefore the residuary must pass by intestacy. Next, the Heirs assert that the will evidences a specific intent on Hagan's part to limit the amounts given to the Charities to the sums listed in Article II of the will, with the remainder of Hagan's estate passing to her heirs-at-law. We agree with the trial court that the Heirs' arguments misconstrue the provisions of Hagan's will and ignore both her intent and the express language and spirit of the document. Furthermore, the Heirs did not address the trial court's alternate conclusion that, even if the Heirs' assertion that Hagan failed to bequeath her residuary estate in trust were accepted, the *cy pres* doctrine would nevertheless save Hagan's estate from passing by intestacy.

As wills are interpreted under the same standards as contracts, we shall apply the *de novo* standard of review to this case. *Compare Dils v. Richey,* 431 S.W.2d 497, 498 (Ky.1968); *and Ratliff v. Higgins,* 851 S.W.2d 455, 457 (Ky.1993); *with Abney v. Nationwide Mutual Ins. Co.,* 215 S.W.3d 699, 703 (Ky.2006).

■■■ The very making of a will creates the presumption that the testator did not intend for any portion of his or her estate to pass intestate. *Sigmon v. Moore's Adm'r,* 297 Ky. 525, 180 S.W.2d 420, 422 (1944). "[I]f a will is susceptible of two interpretations, one disposing of property and the other not, that construction disposing of all property will be favored." *Id.* The presumption against intestacy is even stronger when a will contains a residuary clause. *Lester's Adm'r v. Jones,* 300 Ky. 534, 189 S.W.2d 728, 730 (1945). In the absence of contrary language set forth in the will, residuary clauses shall be construed "liberally so as to pass all of the testator's estate which is not otherwise disposed of and any exclusion from its operation must be plainly and unequivocally manifested by the will." *Sigmon,* 180 S.W.2d at 422. *See also Breckinridge v. Breckinridge's Ex'rs,* 264 Ky. 82, 94 S.W.2d 283, 288 (1936); *Andrew's Ex'x v. Spruill,* 271 Ky. 516, 112 S.W.2d 402, 408 (1938); *Clay v. Security Trust Co.,* 252 S.W.2d 906, 907–08 (Ky.1952).

■■■ The most basic rule of will interpretation is that the testator's intent must be the "polar star" toward which all interpretive efforts are guided, and this intent will be controlling, absent some illegality. *Graham v. Fulkerson,* 187 S.W.3d 324, 328 (Ky.App.2005) (citing *Scheinman v. Marx,* 437 S.W.2d 504 (Ky.1969); and *Combs v. First Security Nat'l Bank and Trust Co.,* 431 S.W.2d 719 (Ky.1968)). As in any case where a court is called upon to interpret a document, the first and most important guide is the plain language of the instrument. *Graham,* 187 S.W.3d at 328 (citing *Linton v. Hail,* 201 Ky. 698, 258 S.W. 111, 112 (Ky.1924)). "If the language used is a reasonably clear expression of intent, then the inquiry need go no further." *Clarke v.*

*Kirk,* 795 S.W.2d 936, 938 (Ky.1990) (citing *Gatewood v. Pickett,* 314 Ky. 125, 234 S.W.2d 489 (Ky.1950)). The parties agree that courts should not examine each provision of the instrument in isolation but should instead construe the drafter's intent from a consideration of the whole document. *See Slattery v. Kelsch,* 734 S.W.2d 813, 814 (Ky.App.1987).

■ In Kentucky, as in most jurisdictions, there is a presumption against intestacy, and where a will can be construed so as to avoid it, this is the construction the court should adopt. *McKee v. Johnson,* 312 S.W.2d 902, 903 (Ky.1958). The presumption is even stronger where there is a residuary clause, because one of its primary functions "is to dispose of such property as the testator may have forgotten or have been ignorant of its ownership." *Chrisman v. Allman,* 302 Ky. 144, 194 S.W.2d 175, 176 (1946).

■ Examining the will in the instant case with these rules of construction in mind yields only one reasonable conclusion, and that is that Hagan's residuary estate is to be held in trust for the exclusive benefit of the Charities. Hagan's language was clear: "I bequeath the residue of my estate, including all lapsed legacies and all personal property to my friend, Catherine Joseph, as trustee on behalf of the following [charitable] organizations." Under the polar star rule, it is impossible to interpret this language as intending to confer a benefit upon Hagan's remote heirs, when no mention of such heirs is made anywhere in Hagan's will.

The Heirs nevertheless argue that the will somehow does not dispose of Hagan's residuary estate by trust and instead evidences a clear intent to pass the residuary to individuals whose names do not appear anywhere in the trust provisions and whose relationship to Hagan is remote. The text of the document, however, contains no evidence of any such intent. In-

stead, the document establishes only the uncontested fact that Hagan did not foresee that a substantial accession to her wealth would occur after her execution of the will and, therefore, did not specifically delineate how any unanticipated monies would be directed. From this, the Heirs conclude that her failure to account for this unpredictable and fortuitous event evidences an affirmative intent to pass the majority of her estate by intestacy. We disagree.

■ The fact that the will does not specifically direct the excess funds is not the end of the inquiry, but instead it is the beginning. When the will does not clearly dispose of property, the trial court's task is to ascertain the testator's intent and to effectuate a disposition that is consistent with that intent. Here, the will and trust provisions contained in Hagan's will indicate that the Charities are essentially the sole objects of Hagan's bounty.

The residuary clause in Hagan's will is unambiguous: "I bequeath the residue of my estate, including all lapsed legacies and all personal property to my friend, CATHERINE JOSEPH, as Trustee on behalf of the following organizations. . . ." Following this language is a list of thirteen charities and instructions that the trustee distribute specific dollar amounts to each. The Heirs labeled the above provision "Part 1" and admit that "Part 1 evidences an intent of [sic] the part of Hagan to include in her Will a bequest of her residuary." However, the Heirs argue that "Part 1" of the bequest is incomplete, and the listing of the thirteen charities following the colon is a "self-contained" general bequest. After acknowledging the notion that each provision of the will should be given effect, the Heirs urge this Court to accept the strange assertion that the language following a colon should not be read in conjunction with the statement preceding it.

We agree with the Charities that the Heirs attempt to complicate an otherwise simple testamentary provision. "While the traditional words of a residuary gift are, of course, the 'rest, residue and remainder of my estate,' or some close variant thereof, it is recognized that no particular language is necessary to create a residuary gift." 80 Am Jur.2d *Wills* § 1312 (2008) (citations omitted). We reject the Heirs' contention that the two portions of the residuary clause cannot be read in harmony and, therefore, hold that it was Hagan's intent to leave the residuary of her estate in trust to the Charities listed in the will.

■■■ Furthermore, the law of trusts also supports the trial court's ruling that a valid trust was created by Hagan's will. There are four requirements for the effective creation of a trust. *Acuity, A Mut. Ins. Co. v. Planters Bank, Inc.,* 362 F.Supp.2d 885, 892 (W.D.Ky.2005) (citing *In re Smith,* 238 B.R. 664, 670 (Bankr. W.D.Ky.1999); and *Frazier v. Hudson,* 279 Ky. 334, 130 S.W.2d 809, 810 (1939)). First, there must be an express intent to create a trust. *Acuity,* 362 F.Supp.2d at 892. Hagan's will leaves the residue of her estate to her friend "as Trustee on behalf of the following [charitable] organizations...." Second, there must be an ascertainable *res. Id.* Hagan's will identifies the trust corpus as "the residue of my estate, including all lapsed legacies and all personal property." Third, there must be at least one sufficiently certain beneficiary. *Id.* Article II lists thirteen charities by name and address, and thus there are thirteen certain beneficiaries. Finally, there must be a "trustee who owns and administers the *res* for the benefit of another (the beneficiary)." *Id.* Hagan's will identifies her friend Catherine Joseph as her trustee, and Ms. Joseph has since been replaced by JP Morgan Chase. Hagan's identified trustee is to take title to her residue "on behalf of" the charitable beneficiaries. Thus, we see no evidence to support the Heirs' notion that the Trust created in Hagan's will is an incomplete trust or is somehow ineffective to convey the residue of her estate into the Trust.

The Heirs' final argument is that the will evidences a specific intent on Hagan's part to limit the amounts given to the Charities to the sums listed in Article II, with the remainder of Hagan's estate passing to her heirs at law. In dismissing this argument, the trial court relied on the case of *Deppen's Trustee v. Deppen,* 132 Ky. 755, 117 S.W. 352, 354 (1909), for the proposition that a testatrix "intend[s] to dispose of [her] entire estate, and, though [she] may make a mistake in [her] estimate of the extent or value of [her] estate, that is not of itself a ground for setting aside [her] will or disregarding [her] intention." Further, "where there is a general description showing that the testator intended to dispose of [her] entire estate, words of quantity or value will not control." *Id.*

■■■ We agree with the trial court that the language of Hagan's entire will, giving each part its natural and legitimate meaning, denotes that it was not Hagan's intent to die intestate as to any part of her property, including her residuary estate. Hagan gave a general description of her entire estate and her intent to distribute her estate to the charities. Words of quantity or value do not destroy her expressed intent to distribute her entire estate to the Charities.

■■■ Finally, we agree with the Charities and the trial court that the *cy pres* doctrine also supports the trial court's judgment in favor of the Charities. The *cy pres* doctrine is among the oldest doctrines utilized by courts of equity in the Commonwealth. *See Citizens Fidelity Bank & Trust Co. v. Isaac W. Bernheim Foundation,* 305 Ky. 802, 205 S.W.2d 1003 (1947) (discussing the history of the doc-

trine in England and Kentucky). As adopted by Kentucky courts, this doctrine provides:

> Where the objects of the charity, and the mode of its application, are pointed out, but not with sufficient distinctness or certainty to be specifically and accurately enforced, the court will, under its cy pres doctrine, give it effect, as near the general intent as may be and even where there is no specific mode or object pointed out, and in some cases where the object fails or ceases to exist, the court will, in respect of the general charitable purpose, devise a mode itself for giving it effect and employing the charitable funds; supply an original want of trustees, or, if necessary, displace old, and create new ones.

*Id.* at 1006. Thus, the rule applies where the settlor of a trust intends for the trust to benefit a charity but where her instructions for some reason cannot be carried out as directed. *Id.* When this charitable intent is present, courts are authorized to supply a mode of distribution that would effectuate the settlor's overall intent. The practical effect of the *cy pres* doctrine is that a charitable trust will fail "when and only when, there has been an entire failure of object or purpose." *Harwood v. Dick,* 286 Ky. 423, 150 S.W.2d 704, 708 (1941) (internal citations omitted).

 The first determination a court must make when assessing the applicability of *cy pres* is whether the trust settlor manifested a general charitable intent. *Hampton v. O'Rear,* 309 Ky. 1, 215 S.W.2d 539 (1948). A general charitable intent is present where the trust displays the settlor's intent to benefit several charities or gives broad discretion as to how funds are to be used, as opposed to an intent to benefit a specific charity for a limited or particular purpose. *Cf. Kentucky Childrens Home, Lyndon v. Woods,* 289 Ky. 20, 157 S.W.2d 473 (1941) (bequests to several charities); and *City of Danville v. Caldwell,* 311 S.W.2d 561 (Ky.1958) (park to be established as a memorial to testatrix's brother). In the instant case, Hagan clearly manifested a general charitable intent. Her entire residuary estate was left in trust to thirteen charitable organizations, and Hagan placed no limitations on how the funds would be used.

After finding a general charitable intent, Kentucky courts have applied the *cy pres* doctrine to authorize a variety of actions that a trust or will did not specifically allow. In *Harwood,* 150 S.W.2d at 704, a trust providing for the establishment and maintenance of a seminary school was appropriated to benefit a county high school when the original school burned down. In *Kentucky Childrens Home,* 157 S.W.2d at 473, the court used the *cy pres* doctrine to allow funds originally designated to be distributed to a private charity to pass to the Department of Welfare when the Department took over the charity.

Although Kentucky courts have never applied the *cy pres* doctrine to distribute excess trust funds, facts similar to those now before this Court have come before courts in other jurisdictions. In *In re Streeper's Estate,* 71 Pa. D. & C.2d 326 (Pa.Com.Pl.1975), a testator left the residue of her estate to her sister, and if her sister predeceased her, the will directed her executor to distribute her entire estate to various charities and individuals. *Id.* at 329–330. The sister did in fact predecease Streeper, but the specific charitable distributions ultimately totaled less than half of the residuary estate. *Id.* Rather than allowing the undistributed portion of her estate to pass by intestacy, that court concluded that the will plainly evidenced intent to dispose of the entire estate and awarded the unallocated portion of the residue to be distributed *pro rata* among the named charitable beneficiaries. *Id.* at 334.

Similarly, in *Quinn v. Peoples Trust & Savings Co.,* 223 Ind. 317, 60 N.E.2d 281 (1945), the Indiana Supreme Court used the *cy pres* doctrine to dispose of excess trust income. There, a testator left the residue of her estate in trust to be used for a college scholarship in the amount of $800.00 per year until the trust was exhausted. *Id.* at 283. As in the instant case, the trust ultimately accumulated funds far in excess of the specific bequest. That court held that the *cy pres* doctrine operated to carry out the charitable purpose of the trust and to prevent the excess funds from passing by intestacy, holding the additional scholarships were to be funded by the trust. The Indiana court noted that, reading the instrument as a whole, there was no intent to benefit the testator's "remote heirs." *Id.* at 286. Just as in the instant case, the court found that the specific bequests made to the testator's friends, like those to Hagan's friends here, revealed that she adequately considered the proper objects of her bounty, further evidencing her intent to exclude her remote heirs from taking under the will. *Id.*

 Thus, there appears to be a consensus among courts considering the issue:

> Even though income from property placed in trust for payment to specified charities may obviously exceed the amount of income contemplated by the donor, or the aggregate amount specified to be paid to them, the excess may be considered within the general intendment of the gift, for distribution to them pro rata.

15 Am Jur.2d *Charities* § 162 (2008). We see no reason to hold otherwise. Hagan's charitable purpose cannot be legitimately questioned. Her expressed intent was to benefit thirteen charities, most of which are devoted to benefitting animals. Thus, the presumption against intestacy and the public policy favoring charitable contributions, as encapsulated by the *cy pres* doctrine, militate in favor of effectuating Hagan's wishes and designating the funds for the benefit of the Charities *pro rata.*

In summation, we agree with the trial court that Hagan intended for the residue of her estate to pass in trust for the benefit of the thirteen named charitable organizations. We find no error in the creation of the trust and no evidence of any intent whatsoever on Hagan's part to limit the amounts given to the Charities to the sums listed in Article II of her will. Finally, we find no intention on Hagan's part to have any portion of her estate pass to her heirs, whether directly or through intestacy. Accordingly, finding no reversible error, we affirm the judgment of the Jefferson Circuit Court entered on February 5, 2009.

ALL CONCUR.