RENDERED: MARCH 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0675-MR

ELIZABETH WALKER,
ADMINISTRATRIX OF THE ESTATE
OF WILLIAM C. WALKER,
DECEASED                                                                 APPELLANT


|  | APPEAL FROM PULASKI CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE EDDY MONTGOMERY, JUDGE |
|  | ACTION NO. 22-CI-00722 |


ROBERT S. SIEGEL, TRUSTEE OF
THE WALKER FAMILY
IRREVOCABLE TRUST UA 5/30/97
FBO WILLIAM T. WALKER, JR.
FAMILY AND THE WALKER
FAMILY IRREVOCABLE TRUST US
5/30/97 FBO LYDIA A. WALKER;
ANNE FINCHER BROWN (A/K/A
DENISE ANNE BROWN); DAVID
WEAVER; JODY DRUCKENMILLER
(F/K/A JODIE LYNN DEPAEPIE);
JOHN AUSTIN GALBRAITH;
KATHRYN GALBRAITH (A/K/A
KATHERINE GALBRAITH);
LAUREL BILBREY; AND PHILLIP
WEAVER                                                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND A. JONES, JUDGES.

CETRULO, JUDGE:  Appellant Elizabeth Walker ("Elizabeth") appeals a Pulaski Circuit Court declaratory judgment that identified the beneficiaries of The Walker Family Irrevocable Trust ("Trust") and awarded Trust distributions to Appellees.[1] After careful review, we affirm.

**BACKGROUND**

In May 1997, William T. Walker and Norvella Walker (together, the "Grantors") executed the Trust.  Upon the death of both Grantors, the Trust split into two separate trust funds:  one for the Grantors' daughter, Lydia A. Walker ("Lydia"), and one for their son, William T. Walker, Jr. ("Son William").  Lydia never married nor had children.  Son William married Teri Walker, and the couple had one child, William C. Walker ("Grandson William").  Questions of

---

[1] Anne Fincher Brown (a/k/a Denise Anne Brown); David Weaver; Jody Druckenmiller (f/k/a Jodie Lynn Depaepie); John Austin Galbraith; Kathryn Galbraith (a/k/a Katherine Galbraith); Laurel Bilbrey; and Phillip Weaver.  The trustee named as an additional appellee takes no legal position on appeal and is not included within the "Appellee" category for purposes of this discussion.

distribution arose after the Trust's original intended beneficiaries – Lydia, Son William, and Grandson William – all died before the Trust was fully dispensed.[2]

Pursuant to the Trust's Article 3.1, Lydia's share was maintained for her after the death of her parents. Upon Lydia's death, her share would have been maintained for the benefit of Grandson William, then turned over to him at the age of 60. However, Lydia was still alive when Grandson William passed away at the age of 36. Son William did not survive his parents. Part of Son William's share was distributed to the Teri Walker Irrevocable Trust, and that distribution is not at issue. Similarly to Lydia's share, the remaining amount of Son William's share was to be held until Grandson William turned 60, but again, he died at age 36.

In September 2022, Trustee Robert S. Siegel ("Trustee") petitioned the Pulaski Circuit Court for a declaratory judgment requesting identification of the proper beneficiaries and instructions for distributing the Trust assets. The Trust language at the root of the controversy is the last paragraph within Article 3.1:

> In the event that [Grandson William] dies before attaining the age of sixty (60) years or before having received all distributions from the [T]rust, the accumulated income therefrom and principal shall be distributed to such grandson's estate. Further, if such [Grandson William] dies before attaining the age of sixty (60) years, without

---

[2] Grantor William T. Walker passed away in October 2005. Grantor Norvella Walker passed away in September 2009. Norvella Walker's death triggered the Trust split. However, Norvella Walker was predeceased by Son William (2002) and his wife, Teri Walker (March 2009). Additionally, Grandson William died at the age of 36 (2013) *before* Lydia (2018).

issue, the remaining principal and accumulated income shall be distributed [to the Appellees].

Through the course of the ensuing litigation, the Trust drafting attorney testified as to his recollection of the Grantors' intentions ("deposition"). The parties referred to this deposition in their court pleadings and filed it with the clerk.[3]  However, in its March 2024 Order, the trial court identified Trust distributions without consideration of the deposition.  The trial court did not believe the parties had filed the deposition, but determined the Trust was unambiguous.  As the court found the terms of the Trust to be unambiguous, it did not need to, nor believe it should, refer to extrinsic evidence (the deposition) in order to determine the distributions.

Ultimately, the court interpreted the Trust to read:  (a) upon Lydia's death, her share was to be distributed to Grandson William; (b) upon Son William's death, the portion of his share not transferred to the Teri Walker Irrevocable Trust was to be distributed to Grandson William; (c) as Grandson William did not attain the age of 60 years nor have issue, his share – the Trust's remaining assets – should be divided among the Appellees.

The Trustee filed a motion to alter, amend, or vacate the March 2024 Order to correct a minor numerical error.  Grandson William's widow (and the

_____

[3] The deposition was filed and initialed by the Pulaski Circuit Clerk on June 30, 2023.

executrix of his estate), Elizabeth, filed a motion to alter, amend, or vacate the March 2024 Order due in part to the court's failure to utilize the deposition to ascertain the Grantors' intent. In May 2024, the court entered an amended order reflecting the Trustee's motion and denying Elizabeth's motion ("May 2024 Order"). Elizabeth appealed.

## ANALYSIS

"[T]he rules applicable to the construction of wills apply to the construction of trust agreements." *Garland v. Miller*, 611 S.W.3d 275, 279 (Ky. App. 2020) (citing *Dep't of Revenue v. Kentucky Tr. Co.*, 313 S.W.2d 401, 404 (Ky. 1958)). When interpreting wills and trusts, the "polar star" that must guide us is the intent of the testator/grantor. *See Benjamin v. JP Morgan Chase Bank, N.A.*, 305 S.W.3d 446, 451 (Ky. App. 2010) (citing *Graham v. Fulkerson*, 187 S.W.3d 324, 328 (Ky. App. 2005)). To determine this intent, we first look at the plain language of the instrument. *Id*. (citing *Graham*, 187 S.W.3d at 328). "If the language used is a reasonably clear expression of intent, then the inquiry need go no further." *Clarke v. Kirk*, 795 S.W.2d 936, 938 (Ky. 1990) (citing *Gatewood v. Pickett*, 234 S.W.2d 489, 490 (Ky. 1950)).

However, if the trust is ambiguous – and *only* if it is ambiguous – may we consider extrinsic evidence. *See Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000) (citing *Sword v. Sword*, 252 S.W.2d 869, 870 (Ky. 1952)). Ambiguity

exists if the trust's "provisions are susceptible to more than one different – yet *reasonable* – interpretation[.]" *Williams v. City of Kuttawa*, 466 S.W.3d 505, 509 (Ky. App. 2015) (emphasis added) (citing *Central Bank & Tr. Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981)). As the construction and legal effect of a written instrument is a matter of law, our review is *de novo*. *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992) (citing *Equitable Life Assurance Soc'y of the United States v. Wells*, 101 F.2d 608, 610 (6th Cir. 1939)); *see also Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007) (citations omitted).

On appeal, Elizabeth appears to misconstrue our review. She argues our review should be limited to the plain language of the Trust, but also asserts that the trial court committed reversible error by not considering the deposition. Again, if the plain language of the Trust is unambiguous, we may not refer to extrinsic evidence. *See Hoheimer*, 30 S.W.3d at 178 (citation omitted). Also, she argues that the Trust is not ambiguous per Lydia's share but is ambiguous per Son William's share. Yet, the Trust language in question deals with those portions of Lydia's share and Son William's share that were being held for Grandson William; as such, a legal distinction between Lydia's and Son William's shares is not necessary nor appropriate for purposes of our review.

-6-

Article 3.1 states that on Lydia's death, her share "is to be maintained . . . for the benefit of [Grandson William]." When Grandson William "attains the age of sixty (60) the Trustees are to distribute outright and free of trust all of the value of [Lydia's] share to [Grandson William]." Further, Article 3.1 states that on Son William's death, part of his share transfers to a trust for his spouse, Teri Walker, and the remainder should be maintained for Grandson William. When Grandson William "attains the age of sixty (60) the Trustees are to distribute outright and free of trust all of the value of [Son William's] share to [Grandson William]." Despite Grandson William dying *after* Lydia, but *before* Son William, the trust (and our analysis) is consistent for both shares because the last paragraph within Article 3.1 does not make further distinctions. Instead, it directs the Trustee how to distribute the Trust funds if Grandson William does not attain the age of 60. Again, the exact Trust language reads:

> In the event that [Grandson William] dies before attaining the age of sixty (60) years or before having received all distributions from the trust, the accumulated income therefrom and principal shall be distributed to such grandson's estate. <u>Further, if such [Grandson William] dies before attaining the age of sixty (60) years, without issue, the remaining principal and accumulated income shall be distributed to [the Appellees]</u>.

(Emphasis added.)

That Trust language is not ambiguous. If Grandson William dies before age 60 *with issue*, distributions should go to his estate; and if Grandson

-7-

William dies *without issue*, distribution should be divided among the Appellees. True, the initial statement does not explicitly state that the distribution should go to his estate if he dies "with issue." Inclusion of the exact words "with issue" is the better course of practice. However, we agree with the trial court that, in this instance, the following sentence makes that intention apparent. Again, both sentences must be read together to construe the Grantors' intent. *See Slattery v. Kelsch*, 734 S.W.2d 813, 814 (Ky. App. 1987) (citation omitted) ("By ascertaining intent by reference to the 'four corners of the will,' courts signify that such intent is to be derived from a consideration of the whole instrument rather than merely portions thereof."). Reading those sentences together, it is clear the Grantors intended the distribution to go to Grandson William's estate if he died *with issue* and to the Appellees if he died *without issue*. It would be unreasonable to read those two sentences otherwise. We must construe the instrument "so as to harmonize its different provisions and give effect to each if possible." *Bowman v. Morgan*, 33 S.W.2d 703, 706-07 (Ky. 1930) (citations omitted). Here, such harmony is possible and apparent.

On appeal, Elizabeth does **not** argue that the failure of the Trust drafter to include "with issue" within the first sentence creates an ambiguity with the second sentence. To be clear, she argues that despite explicit language to the contrary, the intent of the Grantors was for Grandson William's estate to receive

his share of the distribution whether he died with <u>or</u> without issue. However, that argument asks us to ignore a clear, explicit statement within the Trust: "Further, if [Grandson William] dies before attaining the age of sixty (60) years, without issue, the remaining principal and accumulated income shall be distributed [to the Appellees]." Grandson William died before the age of 60 without issue. We do not have the freedom to disregard the plain language of the Trust. *See Benjamin*, 305 S.W.3d at 451-52 (quoting *Clarke v. Kirk*, 795 S.W.2d 936, 938 (Ky. 1990)) ("If the language used is a reasonably clear expression of intent, then the inquiry need go no further."). To quote Elizabeth's reply brief, "If the language used is a reasonably clear expression of intent, then the inquiry need go no further." *Kuttawa*, 466 S.W.3d at 509-10.

Elizabeth's final argument on appeal is that the trial court erred by not considering the extrinsic evidence, the deposition of the drafting attorney. She relies upon criminal cases and argues this "error" impacted her substantial rights, resulting in an unfair proceeding. In fact, the trial court's order concluded it would have been improper to consider the deposition.

As the Trust is not ambiguous, and consideration of extrinsic evidence would have been improper, the trial court did not err in failing to consider the deposition. Even if the court had determined the deposition was properly within the record, it could not have utilized it to interpret the Grantors' intent. *See Wehr*

*Constructors, Inc. v. Assurance Co. of America*, 384 S.W.3d 680, 687 (Ky. 2012) (internal quotation marks omitted) (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) ("[I]n the absence of ambiguity[,] a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.")).

## CONCLUSION

Therefore, we AFFIRM the May 2024 Order of the Pulaski Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Dodd D. Dixon
Winchester, Kentucky

BRIEF FOR APPELLEES DAVID WEAVER, PHILLIP WEAVER, ANNE FINCHER BROWN, JODY DRUCKENMILLER, JOHN AUSTIN GALBRAITH, LAUREL BILBREY, AND KATHRYN GALBRAITH:

Joseph B. Venters
Somerset, Kentucky


BRIEF FOR APPELLEE
ROBERT S. SIEGEL, TRUSTEE
OF THE WALKER FAMILY
IRREVOCABLE TRUST

J. Robert Lyons, Jr.
Lexington, Kentucky